UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60938-CIV-COHN/SELTZER

FIRST FASHION USA, INC.,

Plaintiff,

vs.

BEST HAIR REPLACEMENT, MANUFACTURERS, INC., EDWARD S. SMITH, JR., HAIR BY MAIL, INC., BARBARA CUTSUMBIS, ANTHONY B. KILLINGS, PC SOLUTIONS OF SOUTH FLORIDA, INC., and KENNETH B. HEILMAN,

Defendants.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S VERIFIED MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO HOLD DEFENDANTS IN CIVIL CONTEMPT AND DENYING PLAINTIFF'S VERIFIED EMERGENCY MOTION FOR RESTRAINING ORDER AND SEIZURE OF DEFENDANT SMITH**

**THIS CAUSE** is before the Court on Plaintiff's Verified Motion to Enforce Settlement Agreement and to Hold Defendants in Civil Contempt [DE 96] ("Motion to Enforce") and Plaintiff's Verified Emergency Motion for Restraining Order and Seizure of Defendant Smith [DE 105] ("Motion for Restraining Order"). The Court has considered all of the parties' filings, the evidence admitted and the arguments made at the hearing before the Court on October 28, 2009, the record in this case, and is otherwise advised in the premises.

## I. BACKGROUND

### 1. The Underlying Action and Settlement

This dispute arises out of a falling out amongst the principals of First Fashion USA, Inc. ("First Fashion"). First Fashion is a hair replacement business started by

three business associates, who were also good friends. Wendy Wai Ying Leung Wan and Edward S. Smith, Jr. became friends in 1975 as both were involved in the hair replacement industry. In 1994, Mr. Smith established a wholly-owned company, Best Hair Replacement Manufacturers, Inc. ("BHRM"). According to Ms. Wan, "[i]n November 1997, Smith informed Wan and [Lee Tang Friendy] that his company, BHRM, was experiencing financial difficulties and that he would be closing the business. Smith proposed that he, Wan and Friendy start a new company, using BHRM's assets to distribute hair replacement products in the United States." DE 3 ¶ 6. First Fashion was incorporated in 1997 by Wan, Smith and Friendy. Id. ¶ 3. The business ran smoothly until earlier this year when troubles arose at First Fashion which led to the Complaint in this action. On June 25, 2009, Plaintiff filed a nine-count Complaint [DE 1], including a claims for trademark infringement and unfair competition.

Plaintiff voluntarily dismissed all defendants other than BHRM and Edward S. Smith, Jr. (together, "Defendants"). Plaintiff also filed a Motion for Preliminary Injunction [DE 2]. The Court conducted a full-day evidentiary hearing on Plaintiff's Motion for Preliminary Injunction on July 22, 2009. On July 28, 2009, the Court entered an Order Granting Plaintiff's Motion for Preliminary Injunction. See DE 57.

On August 18, 2009, Plaintiff filed a Verified Motion for Prejudgment Writ of Replevin [DE 67] which alleged that Defendants "are believed to have been selling off First Fashion's inventory and converting the proceeds to themselves." DE 67 at 4. Initially, the parties agreed to resolve the matters raised without Court intervention; however, on September 25, 2009, the parties filed a Joint Status Report [DE 89] indicating several outstanding issues.

On October 2, 2009, the Court entered an Order Regarding the Advancement of

Trial [DE 93]. In that Order, the Court reasoned that "given that substantial discovery has already taken place and there are outstanding issues between the parties that must be resolved promptly, the Court finds that it makes sense to advance the trial date in this action." Accordingly, the Court ordered "that the parties shall confer and provide the Court with a proposed date for trial at the earliest possible date which the parties can agree on. The parties shall provide the Court with the mutually-acceptable date by October 9, 2009."

On October 9, 2009, the parties filed Notice [DE 94] with the Court that Plaintiff had entered into a settlement agreement with Defendants. The Notice indicated that the parties intended to file a Joint Stipulation of Dismissal on or before October 13, 2009.

**2. Plaintiff's Motion to Enforce**

On October 14, 2009, Plaintiff filed its Motion to Enforce [DE 96] stating that the "ink has not even dried on the Settlement Agreement [ ] reached at mediation last week, October 7, 2009, yet Defendant Smith has flagrantly and flauntingly breached numerous provisions thereof." DE 96 at 1. Plaintiff asserts that, pursuant to the Settlement Agreement, Smith promised "to retire, refrain from competing with First Fashion, deliver his pending orders for First Fashion to fill, and refer all of his customers to First Fashion for all future orders." Id. In this regard, the Settlement Agreement required Smith to sign a retirement letter in which told Smith recommended that his customers "continue to purchase all of your hair piece products directly from Suncrest II from this point forward." Id. at 2.

A major point of contention at the mediation was how to dispose of Smith's

existing inventory (referred to in the Settlement Agreement as "On Hand Inventory"). Plaintiff wanted Smith to destroy the 716 hair pieces in Mr. Smith's possession to ensure his compliance with the non-compete provision in the Settlement Agreement, while Smith insisted on recovering his costs for that product. As a compromise, the parties agreed that Smith could either return the product to the manufacturer or sell it to an existing wholesaler or supplier, "but not to any retail customers, including salons, hair replacement centers and end-users." Id. at 3. According to paragraph 9 of the Settlement Agreement, "Smith may dispose of the On Hand Inventory only as follows: a) returned to Mrs. Park; or b) sold to a currently existing wholesaler/supplier." DE 94-1, ¶ 9.

"What Ms. Wan and Mr. Friendly . . . did not know, however, when they reluctantly agreed to allow Smith to sell off his inventory, is that Smith, apparently throughout the day long mediation, was secretly scheming with his employees to simply hand his business, including inventory and customer list, to them to operate as his 'front.'" DE 96 at 3. Plaintiff asserts that Custom Hair Online, Inc. ("Custom Hair") is merely an alter ego of BHRM.

In support of this claim, First Fashion cites, *inter alia*, the following:

- On October 7, 2009, the day of the mediation, Mr. Smith's long-time employee, Elizabeth Guzman, former a corporation called Custom Hair. Although just formed last week, the website states that it "has been providing hair replacement systems and ladies wigs for over 40 years," which is the same length of time Smith claims to have been in the business. Id.

- In addition, Best Hair Replacement Manufacturers, Inc. is the registrant for the Custom Hair domain name and Smith is listed as the administrative and technical contact for Custom Hair's domain name. Id.

- As of October 9, 2009, Customer Hair's invoices contain Defendants' toll-free phone number. Id.

- Fist Fashion obtained Defendants' server under the Settlement Agreement. The server contains a report showing Customer Hair's sales for October 1-12, 2009 even though Customer Hair did not exist before October 7. Id.

In addition, the Settlement Agreement required Smith to turn over his pending orders. Smith turned over 5 orders, "obviously saving the rest for Custom Hair." DE 96 at 5.

On October 16, 2009, First Fashion filed a Supplement to its Motion. See DE 99. The Supplement states that First Fashion received a call from a BHRM customer who stated that she had placed at least 5 orders with Defendants between September and October 2009. The Supplement further states that First Fashion continues to receive calls from Defendants' customers inquiring about existing orders. "First Fashion believes that the Defendants clearly have more than 5 existing pending orders and will have no way to fill the BHRM customer orders if they do not have the required information from Defendants." DE 99 at 2.

**3. Defendants' Response to Plaintiff's Motion to Enforce**

Defendants' Response argues that Mr. Smith has not violated the express terms of the Settlement Agreement. "An examination of the four corners of the document (the settlement agreement) has no false representations of warranties by Mr. Smith/BHRM." DE 101 at 5. Defendants assert that "[s]ince the mediation, Mr. Smith and BHRM have not sold any hair replacement products to any new customers nor have they filled any existing orders." Id. at 3. "Instead, Plaintiff somehow feels duped because they did not know that Mr. Smith had an agreement to sell the assets of BHRM to Custom Hair well prior to the mediation." Id.

The Response further states as follows:

> Even though [Smith] agreed to sell the assets of BHRM to his former employee prior to the mediation, Mr. Smith offered to sell the same assets to Plaintiff at [the] mediation. Mr. Smith had the consent of his former employee to offer the inventory to Plaintiff because the former employee would then be relieved of the obligation of paying Mr. Smith for the inventory. At the mediation, Mr. Smith offered Plaintiff his entire inventory, at cost, and even offered Plaintiff the right to take over the remaining 10 months of the lease where he conducted business. Plaintiff refused both offers.

Id. According to the Response, "the settlement agreement provided that Mr. Smith/BHRM could sell the inventory to an existing wholesaler, which in this case would include Customer Hair, owned by BHRM's former employee, who had operated Custom Hair well prior to the mediation." DE 101 at 3.

In an effort to establish that Custom Hair qualifies as an "existing wholesaler," the Response sets forth the following:

- Customer Hair began business in August of 2009. DE 101 at 6.
- Elizabeth Guzman, a former employee of BHRM, "had an agreement with Mr. Smith/BHRM to own and operate Custom Hair once it began business." Id.
- "Mr. Smith never answers Customer Hair's phones, never operated dominion and control over its activities, except to have registered the domain name it uses." Id.
- "The proceeds from Customer Hair's goods were deposited into BHRM's bank account, but Custom Hair has since opened its own bank account." Id.
- "On October 8, 2009, the day after the mediation, Customer Hair officially filed Articles of Incorporation with the State of Florida." Id.
- "On October 5, 2009, two days prior to mediation, Custom Hair entered into a written asset purchase agreement with Mr. Smith/BHRM for all of BHRM's assets." Id.
- "It is indisputable that Custom Hair was operating [as] an existing wholesaler at the time the settlement agreement was entered into." Id.

The Response also claims that Mr. Smith did not fail to disclose any pending orders. "BHRM produced 5 pending orders to Plaintiff." Id. The Settlement Agreement

requires that Defendants turn over to Plaintiff's counsel "BHRM's existing pending orders, in electronic and hard-copy form, including customer identification information and products currently on order, as well as all other information necessary for FFUSA to fill such orders with its products." DE 94-1, ¶ 7(b). The Response contends that "[l]ong before the mediation, BHRM had sold its pending orders to Custom Hair, and had no duty to refrain from doing so during the course of the litigation." DE 101 at 7. In addition, the Response states that there were approximately 20 orders sold to Customer Hair and that those orders involved goods from a Korean factory that are of a different quality than the products sold by Plaintiff. Id.

The Settlement Agreement also discusses a preexisting order of BHRM for 300 hair pieces from a Korean factory. See DE 94-1, ¶ 10. "The agreement clearly and unambiguously contemplates that Mr. Smith has every right to receive these pieces, and to sell them in accordance with the agreement." DE 101 at 9.

The Response states that Mr. Smith no longer has possession of any information regarding customer lists or pending orders. The Response also states that Mr. Smith directed his accountant to turn over all financial information of Defendants and any failure to comply on the part of the accountant cannot be attributed to Mr. Smith.

The Settlement Agreement provides that in any enforcement action the prevailing party is entitled to attorneys fees. DE 94-1, ¶ 14. The Response states that Mr. Smith has complied with the Settlement Agreement and therefore he should be awarded his attorneys fees incurred in defending against this action.

**4. The October 28, 2009 Hearing**

On October 28, 2009 the Court held a hearing on Plaintiff's Motion to Enforce. See DE 100. The evidence at the hearing supported the factual statements contained in the parties' written submissions. For example, there is no dispute regarding (1) the date Custom Hair filed its Articles of Incorporation, or (2) the fact that Mr. Smith entered into an agreement with Custom Hair two days before the mediation. The dispute between the parties is over the legal conclusions and implications to be drawn from these facts, such as (1) whether Customer Hair qualifies as a "currently existing wholesaler/supplier" pursuant to the Settlement Agreement, and (2) whether Mr. Smith's actions violated the terms of the Settlement Agreement.

At the hearing, the Court gathered additional information. The Asset Purchase Agreement ("APA"), entered into on October 5, 2009 by Defendants and Elizabeth A. Guzman (a/k/a Custom Hair), was discussed at length. Mr. Smith testified that, even though he entered into the APA prior to the mediation, Smith had the authority to engage in negotiations regarding his On Hand Inventory and pending orders during the mediation because of Paragraph 4.6 of the APA. Paragraph 4.6 states that "[t]he Seller has informed the Buyer that Seller is in a Federal Litigation Proceeding against First Fashion USA that may affect the assets being transferred to the buyer." Nevertheless, Mr. Smith maintained that he relinquished ownership over the assets described in the APA and that Ms. Guzman has possession over those assets. Mr. Smith also testified that Ms. Guzman did not compensate Mr. Smith for the subject assets of the APA. Instead, Mr. Smith loaned Ms. Guzman $10,000, which she is supposed to pay back to Mr. Smith at a rate of $1,000 per month.

Mr. Smith also provided testimony regarding the business model of Custom Hair. Smith testified that the company sells products to retail customers and end-users at "wholesale prices." In addition, when questioned at the hearing, Mr. Smith testified that he is not active in Custom Hair's business and he does not consult with Ms. Guzman regarding her business. The Plaintiff subpoenaed Ms. Guzman for the hearing, but she failed to appear.

Finally, Plaintiff made clear at the hearing that it was not seeking a rescission of the Settlement Agreement. Rather, Plaintiff seeks to enforce the Settlement Agreement and requests sanctions for any breaches of that agreement.

## II. LEGAL STANDARD

Civil contempt orders may be (1) remedial, i.e., sanctions designed to compensate the complainant for losses sustained; or (2) coercive, i.e., sanctions designed to compel obedience. A coercive sanction must give the contemnor an opportunity to purge himself or herself and must terminate upon compliance. See Commodity Futures Trading Com'n v. Wellington Precious Metals, Inc., 950 F.2d 1525 (11th Cir. 1992). "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." Id. at 1529. "Once a party seeking civil contempt proves by clear and convincing evidence that the contemnor has violated a court order (such as failure to pay), the burden of production shifts to the contemnor to justify non-compliance with the order." Steffen v. Gray, Harris & Robinson, P.A., 283 F.Supp.2d 1272, 1282 (M.D. Fla. 2003) (citations omitted). To satisfy this burden, "a contemnor demonstrates an inability to comply only by showing that he has made in good faith all reasonable efforts

to comply." Chairs v. Burgess, 143 F.3d 1432, 1436 (11th Cir. 1998) (quotations omitted). The party seeking contempt has the ultimate burden of proof. Wellington, 950 F.2d at 1529.

In addition, the Court has jurisdiction to enforce a settlement agreement. Kent v. Baker, 815 F.2d 1395, 1399-1400 (11th Cir. 1987). "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." BP Products North America, Inc. v. Oakridge at Winegard, Inc., 469 F.Supp.2d 1128, 1133 (M.D. Fla. 2007).

## III. ANALYSIS

### 1. Mr. Smith has Breached the Settlement Agreement

#### A. Mr. Smith Cannot Represent in the Settlement Agreement that He Possessed Inventory While Simultaneously Claiming to Have Transferred Such Inventory

First Fashion argues that "at the time he made this Agreement with First Fashion, it was impossible for Smith to deliver on his promises [e.g., to retire and turn over his pending orders and inventory] and he obviously had no intention to ever do so. Smith had already sold and delivered to the Guzman Sisters his customer list, all of BHRM's pending orders, and BHRM's entire inventory." DE 107 at 3 (citing Exhibit A to APA, which lists the assets transferred). Paragraph 9 of the Settlement Agreement states:

> Smith represents and warrants that BHRM currently has on hand in its inventory 716 hair piece units ordered from a factory in Indonesia (Mrs. Park) for which he has already prepaid the costs (e.g. they are not "on consignment") ("On Hand Inventory"). Smith may dispose of the On Hand Inventory only as follows: a) returned to Mrs. Park; or b) sold to a currently existing wholesaler/supplier.

DE 94-1, ¶ 9. According to Plaintiff, "Smith had already transferred his On Hand Inventory to the Guzman Sisters two days before signing the Settlement Agreement.

Therefore, he had breached ¶ 9 before it was even drafted." DE 107 at 7. In response, Defendants argue that "[t]he fact that Mr. Smith is forced to defend his right to contract prior to the mediation is unfair and goes beyond Plaintiff's right to enforce the settlement agreement." DE 108 at 7 (emphasis in original).

Defendants cannot have it both ways. Mr. Smith may not represent that "BHRM currently has on hand in its inventory 716 hair piece units," DE 94-1, ¶ 9, in the Settlement Agreement he signed on October 7, 2009 and then also take the position that such assets were transferred to Ms. Guzman on October 5, 2009. See DE 108 at 7. Particularly when Mr. Smith did not receive any consideration from Guzman for the assets in question. Therefore, as discussed below, the Court will void the APA.

B. Smith Breached the Non-Compete Provision

The Settlement Agreement contains the following "Restrictive Covenant/Noncompete Agreement:"

> BHRM and Smith hereby covenant and agree not to compete with FFUSA in the hair replacement business, including wholesale and retail, anywhere in the United States for a period of three (3) years commencing on the Effective Date. Smith further covenants and agrees not to compete or participate in any hair replacement business, including wholesale and retail, anywhere in the United States either as an employee, independent contractor, consultant, advisor, principal, agent, broker, or otherwise for a period of three years (3) commencing on the Effective Date.

DE 94-1, ¶ 8. Defendants argue that there is "zero evidence that Mr. Smith personally participated in any attempted sales, actual sales, phone conversations with customers, or the like." DE 108 at 5. Defendants also emphasize Mr. Smith's testimony that he no longer has any involvement with Ms. Guzman and Custom Hair. The Court concludes that there is clear and convincing evidence which demonstrates otherwise. See DE 107 at 8. For example, Custom Hair's website contains explicit references to BHRM and uses BHRM's address and telephone number. Mr. Smith is listed as the administrative

and technical contact for customhaironline.com. Moreover, the website makes several references to "40 years" of experience in the hair replacement business, which is an implicit reference that Mr. Smith is still involved. Defendants have provided no evidence or argument that Custom Hair could support such a claim independent of Smith.

Defendants claim that Mr. Smith's involvement with Custom Hair and Ms. Guzman came to an "official end prior to the mediation" and that "[s]ubsequent acts by Elizabeth Guzman are further evidence that Ms. Guzman is her own entity, and Smith is no longer associated with Ms. Guzman and her company." DE 108 at 6. The Court cannot accept this statement in light of the evidence discussed above and the fact that the "official end" was an agreement whereby Smith provided Ms. Guzman and Custom Hair with a large inventory, pending orders and office supplies in return for $10,000 which Smith loaned to her. There is clear and convincing evidence on record to establish that Mr. Smith has acted as "consultant, advisor, principal," or "broker" to Custom Hair. DE 94-1, ¶ 8. At a minimum, Smith has "participate[d]" in the business of Custom Hair. Id. Therefore, the Court finds that Mr. Smith has violated the broad language of the non-compete provision of the Settlement Agreement.

C. Custom Hair is Not a "Wholesaler/Supplier" Under the Settlement Agreement

Prior to the October 28, 2009 hearing, Defendants took the position that Custom Hair qualified as a "currently existing wholesaler/supplier" under the Settlement Agreement. See DE 101 at 6 ("It is indisputable that Custom Hair was operating and an existing wholesaler at the time the settlement agreement was entered into."). Paragraph 9 of the Settlement Agreement states that "Smith may dispose of the On Hand Inventory only as follows: a) returned to Mrs. Park; or b) sold to a currently

existing wholesaler/supplier." DE 94-1, ¶ 9. Defendants did not press this argument after the hearing, relying instead on the position that the transfer of assets to Custom Hair took place before the Settlement Agreement was entered into. In any event, to prevent any confusion going forward, the Court will address this issue.

Black's Law Dictionary defines "wholesaler" as "[o]ne who buys large quantities of goods and resells them in smaller quantities to retailers or other merchants, who in turn sell to the ultimate consumer." Black's Law Dictionary 1591 (7th ed. 1999). Plaintiff correctly asserts that "Custom Hair was not a wholesaler/supplier. As Smith admitted, Custom Hair was created to replace Hair By Mail, which was a division of First Fashion's business that sold hair pieces directly to end users." DE 107 at 7. At the hearing, Smith testified that Custom Hair sells to retail customers at "wholesale prices." Accordingly, Custom Hair is not a "wholesaler/supplier" under the Settlement Agreement.

**2. Sanctions**

This Court possesses the authority to incarcerate Mr. Smith. "Embedded in Anglo-American law is the inherent power of the judiciary to coerce obedience to its orders by summarily holding a recalcitrant person . . . in civil contempt, and then imprisoning him until he complies." In re Grand Jury Investigation (Braun), 600 F.2d 420, 422 (3d Cir. 1979). Moreover, paragraph 9 of the Settlement Agreement provides, in pertinent part, as follows:

> In the event that Smith's representations and warranties herein are false, or if Smith or BHRM sell any of the On Hand inventory to any retail customer, Smith: a) shall be liable for liquidated damages in the amount of $5,000 for each hair piece sold to any customer (the Parties agree that actual damages in the event of a beach are difficult to quantify and that this amount does not constitute a penalty); and b) Smith agrees, upon application by [First Fashion], to the Court's entry of a Contempt Order with penalty of incarceration.

DE 94-1, ¶ 9 (emphasis added). The Court, however, has no desire to throw Mr. Smith in prison. The Court respects Mr. Smith's service to this Country and appreciates that this litigation has taken a toll on him, as it has on all those involved. That said, the Court expects that Mr. Smith will respect this Court and abide by its Orders and the terms of the Settlement Agreement. Any failure to do so which is brought to this Court's attention by Plaintiff will result, at a minimum, in Mr. Smith being responsible to reimburse Plaintiff's legal fees and costs. Also, the Court will not hesitate to impose the liquidated damages provision that Mr. Smith agreed to in the Settlement Agreement. Finally, this Order shall serve as a clear warning to Mr. Smith that if he deliberately disregards this Court's Orders or the Settlement Agreement, he runs the risk of facing incarceration.

The Court will void the APA. Mr. Smith must remove the remaining inventory from the possession of Custom Hair and Ms. Guzman and transfer such inventory in accordance with the Settlement Agreement which provides that "Smith may dispose of the On Hand inventory only as follows: a) returned to Mrs. Park; or b) sold to a currently existing wholesaler/supplier." DE 94-1, ¶ 9. The Court strongly recommends that Mr. Smith return the inventory to Mrs. Park. Mr. Smith is free to purchase gifts for Ms. Guzman in appreciation for her work over the years. Such gifts, however, cannot take the form of inventory that will sold by Custom Hair or by providing Ms. Guzman with customer information. By taking such actions, Mr. Smith is participating in a business that competes with First Fashion.

Finally, the Court has no choice but to impose upon Defendants the cost of Plaintiff's reasonable attorneys' fees and costs. The Settlement Agreement provides that "[i]n the event that it becomes necessary for any of the Parties to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to recover its

reasonable attorneys' fees and costs." DE 94-1, ¶ 14 (emphasis added).

**3. Pending Orders and Other Matters**

First Fashion also raises issue with respect to pending orders it did not receive from Defendants and a computer which was delivered, albeit locked and password-protected. In response, Defendant argues the following: "Plaintiff's allegation of contempt for failure to produce the orders must fail for two reasons: 1) they were sold prior to the mediation and the five orders that were produced were not part of the sale; and 2) Plaintiff has admitted that there is data on the computers produced that has not been accessed or cross referenced by Ms. Robinson." DE 108 at 12. The Defendants should treat the APA as void and deliver any and all of Defendants' pending orders to First Fashion. In addition, Defendants shall provide to First Fashion the password for the locked computer it delivered to Plaintiff.

Further, the Settlement Agreement provides that Defendants were to turn over BHRM's existing customer list. Defendants shall provide any and all customer information to Plaintiff regarding Defendants' customers, irrespective of whether such information was purportedly transferred to Custom Hair pursuant to the APA.

Plaintiff also complains that the Settlement Agreement requires Defendants to deliver proof of ownership for four vehicles purchased by Mr. Smith so that First Fashion can be assured that it does not risk liability. "However, of four vehicles, Defendants provided proof of ownership for just one." DE 107 at 11. Defendants contend that Plaintiff lacks sufficient evidence to establish that Mr. Smith actually purchased four vehicles while associated with First Fashion. Defendants shall furnish any additional ownership information in their possession. In addition, Defendants shall sign a stipulation representing that First Fashion does not own, and will not be subject

to any liability in connection with, the vehicles at issue.

Defendants represent that they have produced all financial documents and requested their accountant to produce all of BHRM's financial records to Plaintiff. DE 108 at 12. Defendants also represent that all numbers required to be disconnected by the Settlement Agreement are now disconnected. Id. at 13. Therefore, the Court will not take any action with respect to these items. However, the Settlement Agreement remains in force, and should Defendants come across any additional financial information, they should turn over such information to the Plaintiff immediately.

**4. Motion for Restraining Order**

Plaintiff filed a Motion seeking a Temporary Restraining Order under Rule 65(b) and the seizure of Defendant Smith by the United States Marshal. The Motion stated that "Defendant Smith and his cronies peered into First Fashion's windows in a menacing manner, then walked around the back of the office where Wan, Friendy and Robinson's cars are parked." DE 105, ¶ 2. The Motion further states that "Wan, Friendy and Robinson fear that Defendant Smith and his cronies are threatening bodily harm to them and disruption and/or vandalism to their business." Id. at ¶ 3.

To obtain a Temporary Retraining Order under Rule 65(b) of the Federal Rules of Civil Procedure, a party must set forth "specific facts" that "clearly show that immediate and irreparable injury, loss, or damage will result . . . ." Fed. R. Civ. P. 65(b). The Court finds that Plaintiff has failed to meet this standard. Accordingly, the Motion for Restraining Order will be denied.

## IV. CONCLUSION

In light of the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Verified Motion to Enforce Settlement Agreement and to Hold Defendants in Civil Contempt [DE 96] is **GRANTED in part and DENIED in part**. The Court will enforce the Settlement Agreement but, at this time, it will not hold Mr. Smith in contempt.
2. The parties shall file a Joint Stipulation of Dismissal **no later than November 30, 2009**. The Court shall retain jurisdiction to enforce the Settlement Agreement.
3. The Asset Purchase Agreement, entered into on October 5, 2009 by Defendants and Elizabeth A. Guzman (a/k/a Custom Hair) is **VOID**. Defendants shall regain possession of all of remaining assets transferred to Custom Hair. Defendants shall then immediately remit all items covered by the Settlement Agreement in Paragraphs 4 and 7 to Plaintiff. Defendants may dispose of any remaining inventory in accordance with Settlement Agreement.
4. Defendants shall immediately provide Plaintiff with the password to the locked computer.
5. Defendants shall reimburse Plaintiff for reasonable attorneys' fees and costs in connection with Plaintiff's Motion to Enforce. In this regard, Plaintiff shall file documentation regarding its fees and costs by **December 2, 2009**. Defendants will not be responsible for any fees and costs incurred in the filing of Plaintiff's Motion for Restraining Order.

6. By **December 2, 2009**, Defendants shall provide Plaintiff with any additional ownership information in their possession regarding the vehicles discussed in the Settlement Agreement. Defendants shall also sign a stipulation representing that First Fashion does not own, and will not be subject to any liability in connection with, the vehicles at issue.

7. Plaintiff's Verified Emergency Motion for Restraining Order and Seizure of Defendant Smith [DE 105] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 20th day of November, 2009.

**JAMES I. COHN**
**United States District Judge**

Copies provided to:

Counsel of record via CM/ECF