UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60938-CIV-COHN/SELTZER

FIRST FASHION USA, INC.,

    Plaintiff,

vs.

BEST HAIR REPLACEMENT MANUFACTURERS,
INC. and EDWARD S. SMITH, JR.,

    Defendants.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S VERIFIED MOTION FOR ATTORNEY'S FEES AND COSTS

**THIS CAUSE** is before the Court on Plaintiff's Verified Motion for Attorney's Fees and Costs [DE 115]. The Court has carefully considered the Motion, Defendants' Response [DE 118], Plaintiff's Reply [DE 119], the parties' related submissions, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

**1.  The Underlying Action and Settlement**

This dispute arises out of a falling out amongst the principals of First Fashion USA, Inc. ("First Fashion"). First Fashion is a hair replacement business started by three business associates, who were also good friends. Wendy Wai Ying Leung Wan and Edward S. Smith, Jr. became friends in 1975 as both were involved in the hair replacement industry.

In 1994, Mr. Smith established a wholly-owned company, Best Hair Replacement Manufacturers, Inc. ("BHRM"). According to Ms. Wan, "[i]n November 1997, Smith

informed Wan and [Lee Tang Friendy] that his company, BHRM, was experiencing financial difficulties and that he would be closing the business. Smith proposed that he, Wan and Friendy start a new company, using BHRM's assets to distribute hair replacement products in the United States." DE 3 ¶ 6. First Fashion was incorporated in 1997 by Wan, Smith and Friendy. Id. ¶ 3. The business ran smoothly until early 2009 when troubles arose at First Fashion. As a result, on June 25, 2009, Plaintiff filed a nine-count Complaint [DE 1], including claims for trademark infringement and unfair competition.

Plaintiff voluntarily dismissed all defendants other than BHRM and Edward S. Smith, Jr. (together, "Defendants"). Plaintiff also filed a Motion for Preliminary Injunction [DE 2]. The Court conducted a full-day evidentiary hearing on Plaintiff's Motion for Preliminary Injunction on July 22, 2009. On July 28, 2009, the Court entered an Order Granting Plaintiff's Motion for Preliminary Injunction. See DE 57.

On October 2, 2009, the Court entered an Order Regarding the Advancement of Trial [DE 93]. In that Order, the Court directed "that the parties shall confer and provide the Court with a proposed date for trial at the earliest possible date which the parties can agree on. The parties shall provide the Court with the mutually-acceptable date by October 9, 2009."

On October 9, 2009, the parties filed Notice [DE 94] with the Court that Plaintiff had entered into a settlement agreement with Defendants. The Notice indicated that the parties intended to file a Joint Stipulation of Dismissal on or before October 13, 2009.

### 2. Plaintiff's Motion to Enforce

On October 14, 2009, Plaintiff filed a Motion to Enforce [DE 96] stating that the "ink has not even dried on the Settlement Agreement [ ] reached at mediation last week, October 7, 2009, yet Defendant Smith has flagrantly and flauntingly breached numerous provisions thereof." DE 96 at 1. Plaintiff asserted that, pursuant to the Settlement Agreement, Smith promised "to retire, refrain from competing with First Fashion, deliver his pending orders for First Fashion to fill, and refer all of his customers to First Fashion for all future orders." Id.

A major point of contention at the mediation was how to dispose of Smith's existing inventory (referred to in the Settlement Agreement as "On Hand Inventory"). Plaintiff wanted Smith to destroy the 716 hair pieces in Smith's possession to ensure his compliance with the non-compete provision in the Settlement Agreement, while Smith insisted on recovering his costs for that product. As a compromise, the parties agreed that Smith could either return the product to the manufacturer or sell it to an existing wholesaler or supplier, "but not to any retail customers, including salons, hair replacement centers and end-users." Id. at 3. According to paragraph 9 of the Settlement Agreement, "Smith may dispose of the On Hand Inventory only as follows: a) returned to Mrs. Park; or b) sold to a currently existing wholesaler/supplier." DE 94-1, ¶ 9.

"What Ms. Wan and Mr. Friendly . . . did not know, however, when they reluctantly agreed to allow Smith to sell off his inventory, is that Smith, apparently throughout the day long mediation, was secretly scheming with his employees to simply

hand his business, including inventory and customer list, to them to operate as his 'front.'" DE 96 at 3. Plaintiff asserted that Custom Hair Online, Inc. ("Custom Hair") is merely an alter ego of BHRM.

In support of this claim, First Fashion cited, *inter alia*, the following:

- On October 7, 2009, the day of the mediation, Mr. Smith's long-time employee, Elizabeth Guzman, former a corporation called Custom Hair. Although just formed last week, the website states that it "has been providing hair replacement systems and ladies wigs for over 40 years," which is the same length of time Smith claims to have been in the business. Id.

- Best Hair Replacement Manufacturers, Inc. is the registrant for the Custom Hair domain name and Smith is listed as the administrative and technical contact for Custom Hair's domain name. Id.

- As of October 9, 2009, Customer Hair's invoices contain Defendants' toll-free phone number. Id.

- Fist Fashion obtained Defendants' server under the Settlement Agreement. The server contains a report showing Customer Hair's sales for October 1-12, 2009 even though Customer Hair did not exist before October 7. Id.

- The Settlement Agreement required Smith to turn over his pending orders. Smith turned over 5 orders, "obviously saving the rest for Custom Hair." DE 96 at 5.

Defendants opposed the Motion to Enforce arguing that Mr. Smith has not violated the express terms of the Settlement Agreement. "An examination of the four corners of the document (the settlement agreement) has no false representations of warranties by Mr. Smith/BHRM." DE 101 at 5. Defendants asserted that "[s]ince the mediation, Mr. Smith and BHRM have not sold any hair replacement products to any new customers nor have they filled any existing orders." Id. at 3. "Instead, Plaintiff somehow feels duped because they did not know that Mr. Smith had an agreement to sell the assets of BHRM to Custom Hair well prior to the mediation." Id.

4

> The Response further stated as follows:
>
> Even though [Smith] agreed to sell the assets of BHRM to his former employee prior to the mediation, Mr. Smith offered to sell the same assets to Plaintiff at [the] mediation. Mr. Smith had the consent of his former employee to offer the inventory to Plaintiff because the former employee would then be relieved of the obligation of paying Mr. Smith for the inventory. At the mediation, Mr. Smith offered Plaintiff his entire inventory, at cost, and even offered Plaintiff the right to take over the remaining 10 months of the lease where he conducted business. Plaintiff refused both offers.

Id. According to the Response, "the settlement agreement provided that Mr. Smith/BHRM could sell the inventory to an existing wholesaler, which in this case would include Customer Hair, owned by BHRM's former employee, who had operated Custom Hair well prior to the mediation." DE 101 at 3.

### 3. The October 28, 2009 Hearing

On October 28, 2009 the Court held a hearing on Plaintiff's Motion to Enforce. See DE 100. The evidence at the hearing supported the factual statements contained in the parties' written submissions. For example, there was no dispute regarding (1) the date Custom Hair filed its Articles of Incorporation, or (2) the fact that Mr. Smith entered into an agreement with Custom Hair two days before the mediation. The dispute between the parties was over the legal conclusions and implications to be drawn from these facts, such as (1) whether Customer Hair qualifies as a "currently existing wholesaler/supplier" pursuant to the Settlement Agreement, and (2) whether Mr. Smith's actions violated the terms of the Settlement Agreement.

### 4. The Court's Order Granting in Part and Denying in Part Plaintiff's Motion to Enforce

The Court held that Mr. Smith breached the Settlement Agreement. See DE

112. First, the Court found that it was improper for Mr. Smith to represent in the Settlement Agreement that he was in possession of BHRM's inventory and then claim that he transferred such assets to Ms. Guzman two days before the Settlement Agreement was executed. DE 112 at 11. Second, the Court found that Mr. Smith breached the non-compete provision of the Settlement Agreement. Id. at 11-12.

Based on these findings, the Court held that Plaintiff was entitled to reasonable attorneys' fees and costs. The Settlement Agreement provides that "[i]n the event that it becomes necessary for any of the Parties to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs." DE 94-1, ¶ 14. Accordingly, the Court directed the parties to brief the issue of the amount of attorneys' fees and costs that should be awarded to the Plaintiff.

## II. ATTORNEYS' FEES

### 1. Calculation of Attorneys' Fees

A reasonable award for attorneys' fees is calculated using the lodestar method, which requires the Court to multiply the reasonable hours expended by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988); Cuban Museum of Arts & Culture, Inc. v. City of Miami, 771 F. Supp. 1190, 1191 (S.D. Fla. 1991). The fee applicant bears the burden of establishing entitlement to the award and documenting the appropriate hours and hourly rates. ACLU v. Barnes, 168 F.3d 423 (11th Cir. 1999). In determining what is a "reasonable" hourly rate and what number of compensable hours is "reasonable," a court may consider the 12 factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Farley v.

Nationwide Mut. Ins. Co., 197 F.3d 1322, 1340 (11th Cir. 1999).[1] In addition, a district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness." Cullens v. Georgia Dept. of Transp., 29 F.3d 1489, 1492-93 (11th Cir. 1994).

### 1. Reasonable Hourly Rate

The first step in calculating the lodestar amount involves determining the reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services, by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Id.

Plaintiff retained the law firm of Ruden, McClosky, Smith, Schuster & Russell, P.A. ("Ruden McClosky") as counsel in this action. The Motion identifies the billing rates for the attorney and paralegal that worked on this matter as follows: Matthew Nelles at $320.00 per hour and Barbara Rosengarten at $175.00 per hour. DE 115 at 2. The Motion states that these hourly rates "are [Ruden McClosky's] standard rates, which were billed to, and paid by, First Fashion." Id.

In their Response, "Defendants do not dispute that Mr. Nelles' rate of $320.00 is

---

[1] Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-719.

reasonable." Defendants, however, argue that "Ms. Rosengarten's billable rate of $175.00 for paralegal services is excessive. Defendants further contend that Ms. Rosengarten's rate should be reduced to $100.00/hr, a reasonable rate for a paralegal." DE 118 at 2-3 (citing Reilly v. Duval County Public Schools, 2007 WL 2120551 (M.D. Fla. July 23, 2007) (finding $100.00 per hour to be a reasonable rate for a "law clerk")). In Reply, Plaintiff argues that Reilly is distinguishable because "the timekeeper at issue in that case was a law clerk, not a paralegal." DE 119 at 2.

The Court agrees with the Defendants. Plaintiff has not provided the Court with any information regarding Ms. Rosengarten's background. "Absent any information regarding [her] experience, . . . the prevailing rate for a paralegal in this District is $100.00 per hour." Flagstar Bank, FSB v. Hochstadt, 2010 WL 1226112, at *5 (S.D. Fla. Mar. 4, 2010) (citing Walker v. Walden, 2010 WL 411085 (S.D. Fla. Jan.29, 2010) (court awarded paralegal rate of $100.00 per hour); Weitz Co., LLC v. Transportation Ins. Co., 2009 WL 5064118, at *3-4 (S.D. Fla. Dec.16, 2009) (same)); see also Wolf v. Pacific Nat. Bank, N.A., 2010 WL 1462298, at *6 (S.D. Fla. Mar. 18, 2010) (finding reasonable rate for paralegal to be $100.00 per hour); Fox v. The Marquis Corp., 2010 WL 1010871, at *7 (S.D. Fla. Mar. 15, 2010) (finding $90.00 per hour to be reasonable rate for paralegal). Accordingly, the Court finds that a reasonable hourly rate for Mr. Nelles is $320.00, and a reasonable hourly rate for Ms. Rosengarten is $100.00.

### 2. *Reasonable Number of Hours Expended on Motion to Enforce*

The Motion seeks reimbursement for 26.00 hours expended by Mr. Nelles and 53.5 hours expended by Ms. Rosengarten. As noted above, a district court must

determine whether the hours expended are reasonable. Again, a fee applicant bears the burden of documenting the appropriate hours expended so that the Court may properly assess the time claimed for each activity. See Hensley, 461 U.S. at 433; Norman, 836 F.2d at 1301. Excessive, redundant or otherwise unnecessary hours should not be included in the calculation. See Barnes, 168 F.3d at 427. Further, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433; accord Powell v. Carey Intern., Inc., 547 F. Supp. 2d 1281, 1294 (S.D. Fla. 2008).

With respect to the amount of time expended on the Motion to Enforce, Defendants argue as follows:

> Plaintiff's firm has billed nearly 80 hours on the enforcement matter. Defendants contend that 80 hours is excessive, which is tantamount to nearly two full weeks at eight hours per day of billing, and asks that this Court exercise its discretion in determining the reasonableness of these fees. Several of the hours have been redacted; many of the hours were expended on issues that were unnecessary and not vital to Plaintiff's limited success on the issues. Defendant contends that Plaintiff did not prevail on several issues, including the civil contempt, the cancelling of the telephone numbers, customer lists that had been turned over well prior, and the issue that all financial documents had been returned. Also, it is clear that the Parties expended several thousand dollars to fight over a very small amount, namely, some existing orders known to be worth a few thousand dollars.

DE 118 at 3-4. Defendants "request that the Court use its discretion to reduce the amount of the billable time by 40%." Id. at 4.

Plaintiff argues that Defendants' argument that the Court should reduce the award for Plaintiff's unsuccessful claims is "meritless." DE 119 at 1. Plaintiff argues that it was successful on several issues which "went to the heart of First Fashion's Motion to Enforce" and, therefore, the Court should "award attorneys' fees for the

entirety of that Motion." Id. at 2. In addition, Plaintiff argues that Defendants' claim that 80 hours is excessive is based on "nothing more than their own self-serving conclusory opinions." Id. Plaintiff contends that Defendants engaged in an "elaborate scheme to defraud First Fashion and it took some time for First Fashion and its attorneys to unravel that scheme and present evidence to the Court." Id. at 3.

Plaintiff's counsel did an impressive job at the hearing on the Motion to Enforce and emerged as the prevailing party. In addition, the Court acknowledges that diligence was required to demonstrate that Mr. Smith violated the Settlement Agreement. Nevertheless, the Court finds that expending approximately 80 hours in connection with the Motion to Enforce is excessive. Moreover, several sections of the billing statement submitted by Plaintiff's counsel are redacted, making it difficult to evaluate whether tasks were redundant or unnecessary. Therefore, the Court will reduce the overall hours expended by Plaintiff's counsel by 20%.

### 3. Lodestar Amount

Multiplying the reasonable hourly rate by the reasonable hours expended, results in a total lodestar amount of $6,656.00 for work performed by Mr. Nelles and $4,280.00 for work performed by Ms. Rosengartenl, as detailed below.

| Attorney | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Matthew Nelles | 20.8 | $320.00 | $6,656.00 |
| Barbara Rosengarten | 42.8 | $100.00 | $4,280.00 |

Therefore, the Court awards Plaintiff a total amount of $10,936.00 in attorneys' fees.

### III. COSTS

In addition to attorneys' fees, the Motion seeks to recover a total of $968.20 in costs. This total includes costs for document reproduction ($534.95), fax charges ($3.25) and service of process ($430.00).

The service of process fees related to Elizabeth Guzman and Jessica Guzman of Custom Hair. Defendants argue that "[n]one of these witnesses were required or necessary to appear before the Court." DE 118 at 4. The Reply points out that the "Guzmans were served and their attorney filed an objection." DE 119 at 2. The Court finds that seeking to compel the testimony of these witnesses was reasonable and necessary in connection with the Motion to Enforce. However, it appears that Elizabeth Guzman was served twice, both as an individual and as a corporate representative of Custom Hair. See 115-1 at 6. The Court finds this cost to be unnecessary and, therefore, reduces the allowable costs by $80.00.

Further, on top of the service of process fees, which range from $70.00 to $80.00, listed on page 6 of the Exhibit attached to Plaintiff's Motion, there is an additional $120.00 charged for time spent by Mr. Nelles in connection with serving Elizabeth and Jessica Guzman. See 115-1 at 11. It is unclear what this $120.00 relates to given that there are entries in Plaintiff's counsel's billing statements which also relate to the subpoenas. See, e.g., 115-1 at 4. Moreover, the Court finds that $70.00 to $80.00 is sufficient for process fees and, therefore, will disallow this additional $120.00 cost.

Finally, the Court finds that the $534.95 for copying costs is also high for a single hearing. Therefore, the Court will apply the same 20% reduction discussed above and

reduce the award by $106.99. Accordingly, the Court awards Plaintiff $661.21 in costs.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Verified Motion for Attorney's Fees and Costs [DE 115] is hereby **GRANTED IN PART**. Plaintiff is awarded a total amount of $10,936.00 for attorneys' fees and costs, which includes attorneys' fees in the amount of $661.21 and costs in the amount of $11,597.21. A Judgment awarding these fees and costs will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 20th day of April, 2010.

_____
JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of record via CM/ECF